UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM SHO HAHN,

    Plaintiff,

v.     Case No.:25-cv-790

CITY OF OREGON, OREGON SERGEANT
CINDY NIEHAUS, OREGON POLICE OFFICERS
JORDAN COULSON AND CASSIDY RUCHTI, AND
DANE COUNTY, AND DANE COUNTY DEPUTY
NATHAN KATZENMEYER AND COLE BLAKLEY

    Defendants.

---

## COMPLAINT

---

COMES NOW the Plaintiff, William Sho Hahn, by his attorneys, Davey & Goldman, by Lisa C. Goldman and Bruce M. Davey, and as and for his complaint alleges and shows the court as follows:

### NATURE OF THE CLAIM

1.    Plaintiff, William Sho Hahn, brings this civil rights action under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, pursuant to 42 U.S.C § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Wisconsin, regarding actions beginning on September 30, 2022 until October 1, 2022, located at 214 Walnut Street, Oregon, Dane County, Wisconsin against all defendants.

2.    Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorney fees and costs, and any such additional relief as the Court deems proper because defendant

1

City of Oregon and Dane County did not properly train its officers on the limitations the Constitution clearly places on police officers from using excessive force.

## JURISDICTION

3. This Court has jurisdiction pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343(3) and (4) as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

## VENUE

5. Venue is proper in the United States District Court for the Western District of Wisconsin, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action on each and every one of his claims.

## PARTIES

7. Plaintiff, William Sho Hahn, is a citizen of the United States, and was at all times relevant herein an adult resident of Dane County, City of Madison, State of Wisconsin residing at 700 S Park Street, Madison, Wisconsin 53715.

8. Defendant, City of Oregon is a municipal corporation, authorized under and created by the laws of the State of Wisconsin. It is authorized by law to maintain and operate a Police Department. Through its agents, supervisors, operating officers, Council, Departments, Commissions, Boards and Committees, its high-level policy makers, Defendant City Oregon establishes, promulgates and implements the policies of the Oregon Police Department, with regard to hiring, training, supervision and discipline of the employees, officers and agents of the Department.

9. Defendant Dane County is a municipal corporation, authorized under and created by the laws of the State of Wisconsin. It is authorized by law to maintain and operate a Sheriff's Department. Through its agents, supervisors, operating officers, Council, Departments, Commissions, Boards and Committees, its high-level policy makers, Defendant Dane County establishes, promulgates and implements the policies of the Dane County Sheriff's Department, with regard to hiring, training, supervision and discipline of the employees, officers and agents of the Department.

10. Defendant City of Oregon police Sergent Cindy Niehaus upon information and belief, is and at all times herein was an employee of the Defendant City of Oregon acting under color of law and in her authority as a police officer/Sergent, employee, and servant pursuant to the municipal customs, policies and practices of Defendant City of Oregon acting through the Oregon Police Department. Each of the defendant officers is sued in his/her individual capacity, and each acted under color of law and in the scope of his/her employment engaging in the actions alleged in this Complaint.

11. Defendant City of Oregon police officer Jordan Coulson upon information and belief, is and at all times herein was an employee of the Defendant City of Oregon acting under color of law and in his authority as a police officer, employee, and servant pursuant to the municipal customs, policies and practices of Defendant City of Oregon acting through the Oregon Police Department. Each of the defendant officers is sued in his/her individual capacity, and each acted under color of law and in the scope of his/her employment engaging in the actions alleged in this Complaint.

12. Defendant City of Oregon police officer Cassidy Ruchti, upon information and belief, are and at all times herein was an employee of the Defendant City of Oregon acting under

color of law and in her authority as a police officer, employee, and servant pursuant to the municipal customs, policies and practices of Defendant City of Oregon acting through the Oregon Police Department.  Each of the defendant officers is sued in his/her individual capacity, and each acted under color of law and in the scope of his/her employment engaging in the actions alleged in this Complaint.

13. Dane County Deputy Nathan Katzenmeyer, upon information and belief, is and at all times herein was an employee of Dane County, acting under color of law and his authority as a sheriff deputy, employee, and servant pursuant to the municipal customs, policies and practices of Defendant Dane County, acting through the Dane County Sheriff's Department.  Each of the defendant deputies is sued in his/her individual capacity, and each acted under color of law and in the scope of his/her employment engaging in the actions alleged in this Complaint.

14. Dane County Deputy Cole Blakley, upon information and belief, is and at all times herein was an employee of Dane County, acting under color of law and his authority as a sheriff deputy, employee, and servant pursuant to the municipal customs, policies and practices of Defendant Dane County, acting through the Dane County Sheriff's Department.  Each of the defendant deputies is sued in his/her individual capacity, and each acted under color of law and in the scope of his/her employment engaging in the actions alleged in this Complaint.

15. At all times relevant herein, each of the individual defendants violated rights clearly established under the Constitution of the United States, in particular under the Fourth and Fourteenth Amendments, of which reasonable police officers and/or police supervisors acting under their respective circumstances would have known.

## STATEMENT OF FACTS

16. On September 30, 2022, at approximately 11:00 p.m., Oregon Officer Jordan Coulson (hereafter "Coulson"), Oregon Officer Cassidy Ruchti (hereafter "Ruchti") and Oregon

Sergeant Cindy Niehaus (hereafter "Niehaus") responded to 214 Walnut St., Oregon, WI regarding a domestic complaint.

17. Dispatch indicated that the caller's child's father had been at her house, ran southbound on Walnut St., and was under the influence of alcohol.

18. Coulson made contact with the caller, Cheyenne Jones (hereafter "Cheyenne") and Cheyenne informed him that William Hahn (hereafter "Hahn"), her child's father, woke her up in the middle of the night and asked if she had any beer.

19. Cheyenne asked Hahn to leave her house, and moments later, she heard rustling in her basement.

20. Cheyenne locked the basement door and met Hahn at the front door who was attempting to enter her house.

21. Cheyenne called the police and Hahn ran southbound of Walnut St.

22. Hahn texted Cheyenne after he left asking, "Where are the piggies at?"

23. Cheyenne confirmed for police that Hahn did not have any weapons and that no physical altercation occurred, that this has been an on-going issue at the residence.

24. She failed to mention that she actually asked Hahn to come to the house and watch their children.

25. Soon after Coulson made contact with Cheyenne, Niehaus and Ruchti arrived at 214 Walnut St., Oregon, Wisconsin.

26. Niehaus and Ruchti began canvassing the neighborhood southbound of Walnut St.

27. Niehaus and Ruchti went to 195 Walnut St., the home of Cheyenne's nephew.

28. Niehaus and Ruchti observed some movement from a two-door red truck parked on the driveway of the residence located at 195 Walnut St., a private residence and a private driveway.

29. After investigating the truck, Niehaus and Ruchti observed Hahn sleeping in the rear passenger side of the truck.

30. Niehaus directed Hahn to show his hands, open the door and exit the vehicle.

31. Hahn did not respond and remained curled up in the rear passenger seat.

32. When Officer Coulson arrived at the scene, Niehaus instructed Coulson and Ruchti to continue observing Hahn in the vehicle while Niehaus attempted to speak with the owner of the truck.

33. Niehaus made contact with Gage Jones (hereafter "Gage") who was the owner of the vehicle.

34. Gage is also Cheyenne's nephew and was familiar with Hahn.

35. When asked Gage refused to help officers get into his truck saying to Niehaus something to the effect of, "I'm staying out of it" and "can you please get away from my vehicle".

36. At no time did Gage consent to the officers getting into his truck or banging on his truck and repeatedly told Niehaus to, "please get away from my truck/vehicle."

37. Only after Niehaus threatened to damage the vehicle and/or arrest Gage, did he purportedly tell Niehaus to "do what you have to do."

38. Upon information and belief Niehaus and the other defendants never obtained a warrant to enter Gage's vehicle and their attempts to unlock the vehicle from the outside while it sat in a private driveway, on private property, and explicitly without the owner's consent was a violation of the law.

39. Niehaus informed Hahn that a K-9 unit will be responding to the scene and directed Hahn to exit the vehicle.

40. Hahn did not respond.

41. Niehaus contacted Gage a second time in which Gage informed Niehaus he did not have the keys to his vehicle.

42. Niehaus informed Gage there is a felony warrant for Hahn and the officers will break into the vehicle.

43. Niehaus instructed Hahn to unlock the door and show his hands and informed Hahn the K-9 unit had arrived.

44. While Coulson was attempting to unlock the door, Hahn sat up from the rear passenger side of the truck.

45. Hahn shuffled through clothing and reached for a stack of papers.

46. The officers yelled at Hahn to show his hands and unlock the door and that the K-9 unit was on standby. Hahn complied by showing both of his hands.

47. Deputy Katzenmeyer suggested breaking the windows of the truck.

48. Hahn unlocked the doors and Niehaus and Coulson swiftly moved to both sides of the truck.

49. Hahn remained calm and kept his hands in front of him and visible to the officers with one hand holding a stack of papers and his phone.

50. He continued to ask the officers to move the canine away from the truck.

51. Gage came outside and asked the officers to stop yelling as Hahn's hands were empty, visible, and Hahn was conversing in a calm tone with the officers.

52. The officer escalated the tone and volume, yelling at Gage to go back into the house.

53. Katzenmeyer escalated the situation again by threatening to bust open the window of the vehicle yelling, "bust this window, I'm done."

54. Hahn unlocked the doors and stated, "I'm not showing aggression man," or something to that effect.

55. Officer Ruchti aimed a taser at Hahn from the driver's side door.

56. Niehaus pulled her gun out of its holster and pointed it at Hahn escalating the situation, even though Hahn unlocked the doors, had his hands visible, and was slowly making his way over the cluttered back of the truck toward the passenger side door to exit the vehicle.

57. Niehaus reached for Hahn's right arm and attempted to pull him towards the front passenger door.

58. Deputy Katzenmeyer moved to the driver's door with his K-9 dog that was agitated and barking loudly.

59. Hahn remained calm and informed Niehaus he was concerned about the K-9.

60. Niehaus told Hahn, "I'm worried about the dog…I'm worried about you getting bit."

61. Hahn was complying while exiting out of the vehicle and continued to ask Niehaus to calm down while he made movements to exit the vehicle from the back seat.

62. Niehaus lost her temper, declared, "I'm done, get out of the car", and aggressively began pulling Hahn out of the vehicle.

63. Hahn said he would exit the vehicle and to calm down.

64. But, Niehaus would not calm down. Instead, Niehaus' aggressive behavior caused Hahn to sit back down in the back seat of the truck.

65. Coulson then leaned into the truck with Niehaus and both pulled Hahn out of the vehicle.

66. Coulson and Niehaus pressed Hahn up against the passenger side of the truck with his hands behind his back.

67. Ruchti and Coulson each held one of Hahn's arms while Niehaus and Katzenmeyer handcuffed Hahn.

68. Hahn did not resist being handcuffed and was handcuffed properly even though Niehaus stated she thought she might need to tighten one of the handcuffs.

69. Niehaus escalated the situation yelling at Hahn to "stop reaching", even though she knew he was handcuffed and could not reach anywhere, particularly when he was holding his phone and papers and Niehaus was also yelling at Hahn to let go of his papers.

70. Hahn stated he was not reaching and asked the officers if their body cameras were activated.

71. The K-9 continued barking and howling and appeared agitated.

72. Niehaus escalated again and demanded the other officers take Hahn to the ground.

73. Hahn was not resisting the officers as they dragged him towards the grass off of the driveway while he was handcuffed and threw him to the ground.

74. When Hahn was on the ground, Niehaus immediately yelled, "taser, taser, taser" further escalating the situation.

75. Sgt. Niehaus did not have a clean taser shot because the other defendants were actually still holding onto Hahn.

76. Katzenmeyer then deployed his taser on Hahn's front torso while simultaneously struggling to control the K-9 near him while Hahn lay on his back with his hands handcuffed underneath his back, defenseless.

77. While Hahn was being tasered, the K-9 lunged and bit Hahn on his left hip.

9

78. Katzenmeyer dropped his taser and another defendant picked it up and turned it off.

79. Katzenmeyer then pinned Hahn to the ground by stepping on Hahn's neck with his boot heel.



80. Katzenmeyer attempted to pull the K-9 off of Hahn at the same time he had Hahn pinned to the ground with his boot heel.

81. The K-9 continued biting Hahn and dragged him and Katzenmeyer onto the concrete.

82. Coulson and Blakley held Hahn down on the ground while the K-9 continued to chew into Hahn's hip while he was handcuffed and unable to protect himself.

83. Eventually, the K-9 released its bite of Hahn's hip.

84. Hahn was transported by Oregon EMS to St. Mary's Hospital escorted by Niehaus.

85. Hahn sustained several puncture wounds and lacerations on his left hip from the dog bite and a puncture would on his chest from the taser probes.



86.     After the incident, Coulson contacted Cheyenne a second time to confirm her previous statements.

87.     Cheyenne informed Coulson that she had originally requested Hahn to come to her residence to watch their children and later rescinded her request.

88.     Cheyenne was unaware if Hahn knew he was not supposed to be in her house that night.

89. Hahn was charged with resisting/obstructing an officer, domestic criminal damage to property, and domestic disorderly conduct.

90. He was convicted of disorderly conduct. All other charges were dismissed. See Dane County case number 22CF2595.

91. As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiff Hahn has sustained the following injuries and damages, among others:

    a.    Physical injuries to his hip, chest, and body;

    b.    Emotional and psychological injury, including but not limited to anxiety, pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future.

    c.    Deprivation of liberty and property.

## CLAIMS

### COUNT I

**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983**
**INDIVIDUAL CAPACITY EXCESSIVE FORCE CLAIM – ALL INDIVIDUAL DEFENDANTS**

92. Plaintiff re-alleges the above paragraphs as if fully set forth herein.

93. At all times material hereto, Defendants had a legal duty to use only the amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision, and control of such persons. Further, Defendants had a legal duty to use no force with a cooperating citizen.

94. While in contact with Hahn, defendant officers and deputies deliberately and intentionally threw Hahn to the ground while handcuffed, tasered him, stuck a boot on his neck, and allowed the K9 dog to bite him while defendants held him down on the ground handcuffed.

95. Defendants' intentional use of force created a likelihood of bodily injury.

96. Hahn posed no immediate threat to the safety of Defendants or others. Defendants knew Hahn was cooperating while conversing with several officers and that Hahn never threatened defendants in any manner.

97. Under the circumstances, Defendants' use of non-deadly force was excessive and unconstitutional.

98. By their actions, Defendants deprived Hahn of the clearly established right to be free from force, which was excessive under the circumstances, in violation of his rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution.

99. Hahn was non-violent and slowly cooperative once he unlocked the door to the truck and tried to exit.

100. Hahn further was cooperative with handcuffing and denied he was reaching for anything once handcuffed.

101. Hahn could not move his hands as they were handcuffed, and he was secured by three defendants.

102. Defendants physically harmed Hahn's body, wrists, and leg/hip and caused Hahn pain and suffering, dragging him to the grass, throwing him onto the ground, tasering him, allowing the K-9 to bite and latch onto his hip, allowing the K-9 to drag him to the cement, holding him down while the K-9 dug his teeth into Hahn's hip, putting a boot onto Hahn's neck and using that foot as leverage, putting extreme pressure on his neck all causing Hahn pain and suffering.

103. As a direct, foreseeable, and proximate result of the acts and conduct of Defendants, plaintiff Hahn has sustained the following injuries and damages, among others:

    a. Physical injury;

b.  Deprivation of liberty;

c.  Emotional and psychological injury, including but not limited to anxiety, pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future.

## COUNT II

### 42 U.S.C. 1983 – *MONELL* CLAIM
### AS TO DEFENDANTS' CITY OF OREGON AND DANE COUNTY

104. Hahn incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.

105. At all times herein the Defendant City of Oregon established, promulgated, implemented and maintained customs, policies and/or practices, with regard to the City of Oregon Police Department.

106. At all times herein the Defendant Dane County established, promulgated, implemented and maintained customs, policies and/or practices, with regard to the Dane County Sheriff's Department.

107. Defendants Dane County and City of Oregon are liable under *Monell* for failing to ensure its officers/deputies would abide by the fourth Amendment rights to the citizens with which they come into contact, showing deliberate indifference to the rights of citizens like Hahn.

108. At all times herein Defendant City of Oregon and Dane County established, promulgated, implemented and maintained the following customs, policies and/or practices:

a.  Inadequately training, supervising and/or disciplining its police officers/deputies and supervisors, and knew, who used or had been known to use excessive and unreasonable practices with regard to the execution of investigations and arrests like this one;

  b. Inadequately training, supervision and/or disciplining those police officers/deputies and supervisors' Defendant City of Oregon and Dane County knew, or about whom were on actual notice, who used or had been known to undertake and engage in unlawful, unreasonable and excessive seizures, of others;

  c. Inadequately training, supervising and/or disciplining its police officers/deputies and supervisors, with regard to the circumstances and procedures under which to undertake seizures, entries into vehicles without the owner's consent, arrests and searches into and onto the premises of others;

  d. Inadequate training, supervising and/or disciplining its police offices and supervisors, with regard to the circumstances and procedures under which to employ physical force such as throwing a handcuffed suspect to the ground, putting boots on a suspect's neck, tasering a suspect, and allowing a K-9 to bite a handcuffed cooperative suspect;

109. Each of the above policies of inadequate training, supervision, and discipline of the individual defendants and others, was known to the defendant City of Oregon and Dane County as highly likely and probable to cause violations of constitutional rights of members of the public in general and the Plaintiff herein, in particular.

110. As a direct and proximate result of the actions and conduct of the Defendants complained of herein, plaintiff has sustained the following injuries and damages, among others:

  a. Physical injury;

  b. Deprivation of liberty;

    **c.**    Emotional and psychological injury, including but not limited to anxiety, pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future;

## COUNT III

### 42 U.S.C. 1983 – FAILURE TO INTERVENE
### ALL DEFENDANT POLICE OFFICERS and DEPUTIES

111. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.

112. At all times material hereto Defendants officers and deputies, had a legal duty to use the amount of force reasonable under the circumstances and none with a cooperative citizen who was unarmed.

113. At all times material hereto Defendants had a legal duty when present to intervene to prevent other law enforcement officers from infringing on the constitutional rights of citizens.

114. Defendants failed to intervene while Hahn was tasered, thrown to the ground while handcuffed, and each allowed the K9 to bite Hahn's hip and stay on his hip, all acts of excessive force.

115. None, particularly Katzenmeyer moved the K-9 away from the scene once Hahn was handcuffed to prevent an unlawful bite

116. Defendants had a realistic opportunity to intervene and prevent harm from occurring but failed to do so.

117. Defendants knew at the time that Plaintiff was not alleged to have harmed anyone, was unarmed, and was suspected of causing a disturbance, a misdemeanor, and that Plaintiff was calm, nonviolent, and cooperative.

118. As a direct and proximate result of the acts and conduct of Defendants, plaintiff has sustained the following injuries and damages, among others:

   a. Physical injury;

   b. Emotional and psychological injury, including but not limited to anxiety, pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future;

## COUNT VI

## INDEMNIFICATION

119. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

120. Wisconsin law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

121. The individual defendants were employees of the City of Oregon Police Department and Dane County Sheriff's Office and acted within the scope of their employment in committing the misconduct described herein.

## **RELIEF REQUESTED**

Wherefore, Plaintiff Hahn demands the following relief jointly and severally against all Defendants in a monetary amount a jury deems reasonable and:

   a. A declaration that Defendants violated the federal rights of Plaintiff;

   b. Compensatory damages for the physical, emotional, economic injuries suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial;

   c. Punitive and exemplary damages as to the individual defendants to the extent allowable by law;

    d.    Attorney fees and costs as allowed, pursuant to 42 U.S.C. § 1988; and

    e.    Such other and further relief as appears just and proper.

Dated: September 21, 2025

                                    DAVEY & GOLDMAN

                                    /s/ Lisa C. Goldman
                              Lisa C. Goldman, SBN 1029893
                              Davey & Goldman
                              5609 Medical Circle, Suite 101
                              Madison, WI 53719
                              (608) 630-9700 (telephone)
                              (608) 205-5645 (facsimile)
                              lgoldman@daveygoldman.com (email)

                              Attorneys for Plaintiff